AFFIDAVIT

I, Jennie Emmons, being duly sworn, depose and say:

Introduction

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have served as a Special Agent since 1997. My experience includes federal investigations of complex white collar crime, child sexual exploitation, kidnapping, and human trafficking. In the course of these investigations, I have gained an understanding of current technology, to include computers and online accounts, and have conducted analyses of the data related to such accounts, for the purpose of solving and proving crimes.

2. This affidavit is submitted in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc. to disclose to the government copies of the information described in Attachment B, associated with the account donaldpalm1985@gmail.com, described in Attachment A. As discussed more fully below, there is probable cause to believe that Donald (aka Donny) Therrien used this account in the commission of child exploitation offenses, including possession of child pornography, in violation of 18 U.S.A. § 2252(a)(4)(B), attempted receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) & (b)(1), and transportation and attempted transportation of child pornography in interstate commerce, in violation of 18 U.S.C. § 2252A(a)(1) & (b)(1), by ordering and seeking delivery from an on-line business of photographs constituting child pornography through a false identity associated with this email account. There is probable cause to believe that the information described in Attachment B will provide evidence of those crimes.

3. Since this affidavit is being submitted for the limited purpose of supporting a search warrant application for the email address donaldpalm1985@gmail.com, I have not included details of every aspect of the investigation. Except as otherwise noted, the information contained in this affidavit was relayed to me by members of FBI, or obtained by me personally.

Probable Cause

4. On February 23, 2018, Special Agent (SA) Rachel Corn of the FBI Baltimore Field Office provided information to the FBI Burlington – Vermont office regarding an online photo order containing images that appeared to be child pornography. According to SA Corn's referral and subsequent conversations with her, an employee of District Photo Inc., 10501 Rhode Island Avenue, Beltsville, Maryland, told her about a photo print order flagged for a violation of the company's policy regarding pornography. Specifically, on February 4, 2018, District Photo received an order to print 85 images of nude or partially clad minors. District Photo printed the images, but the order was cancelled based on the internal policy before the prints were mailed to the customer.

5. FBI Baltimore obtained the 85 printed images, which in turn were provided in the referral to FBI Burlington, Vermont, office. I have reviewed the 85 printed images. The images depict children, primarily female, to include infants, toddlers, prepubescent and early pubescents. The images show nude children individually or in groups and some of the images appear to show

1

children in a nudist setting. Some, based on my training and experience, depict sexually explicit conduct – specifically lascivious exhibition of the minors' genitalia. Such images, include (but are not limited to): an image of a nude female child in a gymnasium with her arms and legs spread so that her genitalia is visible; an image of a nude female toddler squatting and urinating with her genitalia visible; an image of an approximately two year old female in a dress, sitting with her knees folded - her nude genitalia visible under the dress; and an image of a nude female infant with her legs open and her genitalia visible. This image does not include the child's face and the focal point of the image is the child's genitalia.

6. Copies of the 85 printed images were submitted to the Child Victim Identification Program at the National Center for Missing and Exploited Children. Images of four child victims, previously identified by law enforcement, were found among the 85 images, to include sisters from Indiana, a child from Michigan and a child from the Ukraine. The first image described above depicts one of the Indiana victims, both of whom were under 18 years old at the time the images were taken.

7. I have spoken to employees of District Photo and reviewed District Photo's website, where I learned that District Photo is a company that performs photo printing for various businesses, to include FreePrints and Photoaffections, both of which are brands under a parent company called PlanetArt. PlanetArt is located at 23801 Calabasas Road, Suite 2005, Calabasas, California. When photos are ordered online through a Planet Art company, District Photo sometimes prints the pictures and mails them to the customer.

8. I have also reviewed the website for PlanetArt, which states in part that "The PlanetArt companies provide consumers and small businesses with the tools, content and services to create quality personalized products that are both innovative and affordable." One of PlanetArt's brands, according to the website, is Photoaffections. A link on the PlanetArt website for photoaffections directs a customer to photoaffections.com, an online photo printing and product business.

9. My review of PlanetArt website also shows that another PlanetArt business is the mobile app FreePrints. A link on the PlanetArt website directs a customer to freeprintsapp.com, which states, "Ordering your free prints is fast and easy! Just open the FreePrints app and select the photos you want to print from your phone or from Facebook or Instagram. Then select the quantities and you're done! Your free photo prints are printed exclusively on Kodak or Fujifilm paper and are delivered to your doorstep in just days." Under the "Grab Your Images" instructions, users are specifically told to "Select photos on your phone or from albums on Facebook, Instagram, Dropbox, Flickr, Google Photos and more. Under the "What Do I Get For Free?" section it states, "Up to 85 free 4x6 prints per month."

10. Agent Corn told me that the employee at District Photo provided information received by District Photo associated with the print order. I have reviewed that order information. The customer is identified as Andrew Palm, 310 Ethan Allen Hwy, Milton, VT 05468. Additional information shown on the order is (in part) as follows:

Brand Name: Free Prints

Order Type: Digital

Partner's Order Info (Ext Order ID): FP134595931

Date Created: 02/04/2018 02:08:51

Date Received: 02/04/2018 02:08:51

Archive Path (Win) file:

//////dpicluster/Archive26/PhotoAffections/20180204/2/FPI34595931

Archive path (MAC):

smb:// dpicluster/Archive26/PhotoAffections/20180204/2/FPI34595931

The order information showed the order included 85 glossy prints and that the order was canceled for a "Standards Violation (includes pornography)."

11. District Photo employees provided me additional information related to how a photo order is processed. I was told that the large majority of the PlanetArt-related photo print orders are received via the mobile phone app FreePrints, though some come through the website Photoaffections. A customer uploads images to FreePrints using the mobile app, or to the website Photoaffections, and FreePrints/Photoaffections routes the order, via the Internet, to District Photo with the images. District Photo receives the order/images on a server based in their Beltsville, Maryland facility. The above-noted Archive Paths represent the location of the order from PlanetArt on District Photo's server. District Photo does not see the images until they are printed. Employees who see the printed images are trained to hold images that may contain child exploitative content. Such material is reviewed by a designated employees, who will then refer it to the FBI if it is suspected of containing such content.

12. Shortly after received the referral from FBI Baltimore, I contacted Detective Frank Scalise of the Milton Police Department to inquire about the 310 Ethan Alley Hwy address. Detective Scalise told me that he knew that address to be associated with a Donald Therrien, who had been the subject of a police investigation involving suspicious printed photos of minor females at a Rite Aid in Milton, Vermont, in March 2016.

13. On March 5, 2018, Detective Scalise provided me with police report narratives for the March 2016 incident, which I have reviewed. These reports show the following:

a. On March 5, 2016, Milton Police Officer Jason Porter responded to the Rite Aid at 199 US Route 7 in Milton and learned that a set of photos had been printed at the in-store electronic photo center of "young girls wearing inappropriate outfits in poses." The report further stated the most of the photos appeared to have come from the Internet and had been enlarged from smaller thumbnails because they appeared pixelated. One of the images showed the website www.carissashaw.com and others also showed what appeared to be an unreadable web address in the bottom right corner. Detective Scalise described the images as depicting clothed young females, with the exception of one which showed the back and buttocks of a child.

      b. A Rite Aid customer by the name of Laura Sibley, who originally found the set of photos, was interviewed by Officer Porter. Sibley advised that she and her husband were at the Rite Aid attempting to print photos, but the printer was out of paper. An employee reloaded paper and the machine began printing the aforementioned set of photos. Sibley and her husband found the images and notified an employee. They found the images so disturbing that they had to go sit in their car.

      c. The Rite Aid Manager who made contact with Officer Porter that day advised that the photos had been printed by a Sandy Billings. Officer Porter made telephonic contact with Billings, who advised that she had changed her name to Thibault and that she had been in the store that day with her son, Donald "Donny" Therrien. Thibault voluntarily came to the Milton Police Department later that day and was interviewed by Officer Porter and Detective Scalise. Thibault stated that she had printed several photos of her grandchildren and that Therrien, who was with her, had not gone near the photo machine. She also advised that Therrien, who was on federal probation for a child pornography-related conviction, was not allowed to have any contact with minors. Later in the interview, Thibault admitted that there was a period of time at Rite Aid when Therrien was at the photo printing machine by himself. Thibault advised that she resides at 310 Ethan Allen Highway with Therrien, her brother Wayne and two other persons. Thibault was not aware of Therrien having Internet or computer access, but stated that he did have a phone.

      d. Officer Porter and Detective Scalise contacted Federal Probation Officer (FPO) Lou Stasi. FPO Stazi confirmed that Therrien was under federal supervision. FPO Stazi later informed Milton PD that he had located Therrien on a separate day and found that he was in possession of a cellular phone with Internet access.

      14. In early March 2018, I learned the following information from public court filings. Therrien, born January 17, 1985, was convicted in 2009 of federal child pornography possession charges. He was sentenced to 72 months for this offense to run consecutively with a 60-month sentence for a firearms offense charged in 2005. While on supervised release, he was violated for behavior that included the incident at the Milton Rite Aid. In April 2016, Therrien was sentenced for three violations of supervised release: 1) use of an electronic device without an approved Internet plan, 2) possession of sexually explicit material (adults and minors), and 3) contact with persons under 18 years of age without permission. He received an additional 24 months in prison and five years of supervised release. According to the Bureau of Prison's incarceration records, Therrien was released on December 6, 2017, at 12:23 p.m. from FCI Hazelton in Bruceton Mills, West Virginia. Public court filings show that he thereafter began supervision under FPO Lou Stazi. I later learned from public filings that in April 2018, Therrien was summoned for a new violation of supervised release, based on his repeated contact with children. He was detained shortly after this violation. The supervised release paperwork from the Probation Office shows that Therrien was living at his mother's residence in early 2018 and that Therrien repeatedly interacting with his nieces after being instructed by his probation officer not to have such contact. Those records also state that Therrien possessed printed images of nude children while in BOP custody in 2017.

15. In early March 2018, I asked SA Corn if there was an email address associated with the District Photo order. SA Corn contacted District Photo, who in turn contacted PlanetArt, and I learned through SA Corn that the email address donaldpalm1985@gmail.com is associated with the order. On March 7, 2018, a preservation letter was sent to Google regarding this email account. I recently confirmed with a PlanetArt employee that the February 4, 2018 order was one of five orders placed between December 22, 2017 and February 4, 2018 by a customer using the email address donaldpalm1985@gmail.com and a street address of 310 Ethan Allen Hwy, Milton, VT 05498.

16. On April 2, 2018, I received a response from PlanetArt for any subscriber, account, Internet connection logs, and/or billing and payment information for the February 4, 2018 order (and any previous orders) placed by Andrew Palm, 310 Ethan Allen Hwy, Milton, VT, donaldpalm1985@gmail.com. The response showed the following:

a. The order was placed on February 3, 2018 at 23:03:11 with a Mastercard ending in 4033 (Expiration August 2018). The transaction was for $10.99 and was processed by Paypal with a Mastercard ending in 4033/Expiration August 2018. The billing information showed Andrew Palm, 310 Ethan Allen Hwy, Milton, VT 05468-9704. "Photoaffections1" was the "Merchant/User" and the "Client IP Address" was listed as 54.173.31.157 (Note: IP means Internet Protocol – or is short for Internet Protocol Address).

b. In the "Transaction History" section, the aforementioned transaction on February 3, 2018 was listed along with what appears to be a refund (for this transaction) on February 8, 2018, when $10.99 was credited. Information about several earlier transactions was also included: one on December 22, 2017, for $2.00; one on January 2, 2018 for $3.99; one on January 5, 2018 for $8.99; and one on January 15, 2018 for $10.77.

c. Details about the December 22, 2017 transaction show it was also processed by Paypal with a Visa card ending in 8943/Expiration May 2021. The "Client IP Address" was listed as 54.173.31.157 and the "Merchant/User" as "Photoaffections1."

d. Details about the January 5, 2018 transaction show it was processed with a Visa credit card ending in 9496/Expiration July 2026. The "Client IP Address" was listed as 54.173.31.157 and the "Merchant/User" as "Photoaffections1."

17. In April 2018, Paypal Global Investigations responded to a subpoena for records related to Andrew Palm and the above transactions. I reviewed the response. Accounts identified for Andrew Palm at 310 Ethan Allen Hwy, Milton, Vermont, included: (1) Paypal account number 1247449668947486041, created on December 23, 2017, which listed a Visa Prepaid card ending in 8943 (Expiration May 2021), issued by Metabank; (2) Paypal account number 1615088498963155120, created January 2, 2018, which listed a Mastercard Debit Card ending in 4033 (Expiration August 2018), issued by People's United Bank; (3) Paypal account number 1391628384697958049, created on January 5, 2018, with a Visa Prepaid card ending in 9496 (Expiration July 2026), issued by Metabank. (Note: Paypal included the full account number for the aforementioned credit/debit cards). As noted in the previous paragraph, PlanetArt identified

Mastercard ending in 4033 as being used for the photo print order of 85 prints flagged by District Photo, and Visa cards ending in 8943 and 9496 with previous orders.

18. On May 15, 2018, People's United Bank provided certain bank information in response to a subpoena. The response, which I reviewed, identified the Mastercard Debit Card ending in 4033, as described above, as belonging to a bank account in the name of Sandra Durand at 310 Ethan Allen Hwy, Georgia Vermont 05468. The bank account statement, dated January 22, 2018, showed a "Mastermoney" (with card ending with 4033) purchase from Photoaffections posted on January 3, 2018 for $3.99. The $3.99 was subtracted from the account balance. On January 16, 2018, a posting on the statement indicated the same card was used again for a Photoaffections purchase in the amount of $10.77 – and $10.77 was subtracted from the account balance. Another account statement, dated February 20, 2018, shows the same debit card being used for a $10.99 Photoaffections purchase, which posted on February 6, 2018. A credit from Photoaffections in this same amount posted three days later. As previously described, specifically in in paragraph 16 (a & b), the $10.99 Photoaffections purchase is related to the 85 photo prints order flagged by District Photo, and all of these transactions were identified in the transaction history provided by PlanetArt for the same customer, "Andrew Palm" at 310 Ethan Allen Hwy, Milton, Vermont. Based on my training and experience, it is not unusual for a transaction to take a couple days to post to an account, as appears to be the case in with these transaction.

19. I reviewed the canceled checks and deposit slips in the December 2017, January 2018 and February 2018 statements, which show that the account holder also used the name Sandra Thibault and Sandy Thibault. As noted above, Sandy Thibault is Therrien's mother.

20. On May 31, 2018, Metabank responded to a subpoena regarding the Visa Prepaid Cards ending in 8943. As described above, specifically in paragraph 16 (c), PlanetArt records show this credit card was used for a $2.00 transaction on December 22, 2017. Metabank provided information for this account, to include the account holder's name: Donald Therrien - and the associated "Org/Program Name & Number" for the card: "17/AFC Federal Bureau of Prisons 63537." The provided transaction history shows that a "funds transfer" from the "AFC Federal Bureau of Prisons" of $308.85 was loaded on the card on December 6, 2017. As detailed earlier in this affidavit, this is the date Donald Therrien was released from federal prison in West Virginia. The transaction history showed the card was then used on the same day at the "Little General" in Morgantown, West Virginia (an Internet search identified Little General Store at 1157 Van Voorhis Rd. Morgantown, West Virginia), and at an AT&T store in Morgantown, West Virginia. The last transaction listed in the history is a December 23, 2017 purchase for $2.00 on Photoaffections.com.

21. On May 31, 2018, Google responded to a subpoena requesting subscriber information and login data for the email address donaldpalm1985@gmail.com, which I have reviewed. According to the response, the email account was created on December 6, 2017, the date of Therrien's release from federal prison. The IP login history shows numerous logins from several IP addresses between December 6, 2017 to March 23, 2018. The first login occurred on

6

December 6, 2017 from IP address 107.19.188.8 at 19:28:18 UTC, which is also the IP associated with the account creation on the same date.

22. I conducted open source checks on the IP addresses in the Google email records. An open source check on the IP address for the first Google login showed it assigned to a public WiFi Internet access venue at the AT&T Retail Store #126840, 1111 Van Voorhis Road, Morgantown, West Virginia. I found that the other IP addresses in the Google records belonged to Comcast, Fairpoint Communications, and AT&T/AT&T Mobile.

23. On April 2, 2018, Comcast responded to a subpoena to identify the subscriber(s) associated with numerous Comcast IP addresses listed in the Google response. I have reviewed the response. Comcast identified all the Comcast IP addresses as being assigned to Sandra Thibault, 310 Ethan Allen Hwy, Georgia, VT 05468-9704 during the dates and times they were used to login to donaldpalm1985@gmail.com.

24. On May 23, 2018, Yanna Technologies, the designated agent for Fairpoint Communicatons, responded to a subpoena to identify the subscriber(s) associated with numerous Fairpoint Communications IP addresses listed in the Google response. I have reviewed the response. Yanna Technologies identified all the Fairpoint Communications IP addresses as being assigned to Amanda Putney, 310 Ethan Allen Hwy, Milton, VT 05468, email mandytherrien123@myfairpoint.net, during the dates and times they were used to log into donaldpalm1985@gmail.com. FPO Stazi told me that Amanda Putney/Therrien was the partner or wife of Donald Therrien's brother and that part of Donald Therrien's most recent violation of supervised release, as described above, involved his visits to his brother's residence while children were present.

25. I conducted an open source IP look-up for IP address 54.173.31.157 and found that it belongs to Amazon, Inc. I believe this IP address is associated with PlanetArt's business and not with the individual placing the order. As noted previously, this was the "Client IP Address" listed in the Planet Art order information for the 85 photos, and other orders. A subpoena was issued to Amazon requesting any and all subscriber information for IP address 54.173.31.157 at the following dates and times (all times in PST): 1/2/18, 5:25 AM, 1/15/18, 7:07 AM, 2/3/18, 23:03 PM, 2/8/18, 11:09 AM, which are all dates and times listed in the transaction history provided by PlanetArt. On July 11, 2018, a response to this subpoena was received from Amazon Web Services. I have reviewed the response. It shows the IP address with an active Amazon Web Services account for Planet Art at 23801 Calabasas Road, Suite 2005, Calabasas, California. According to information available on the Internet, Amazon Web Services is a subsidiary of Amazon that provides on-demand cloud computing platforms for individuals, companies and governments, on a paid subscription basis.

26. On July 12, 2018, Therrien was charged, *by indictment* [initials] based on my investigation, with knowingly transporting and attempting to transport child pornography, in or affecting interstate or foreign commerce, in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1).

7

Background Concerning Email

27. In my training and experience, I have learned that Google, Inc. provides a variety of on-line services, including electronic mail ("email") access, to the public. Google, Inc. allows subscribers to obtain email accounts at the domain name gmail.com, like the email account listed in Attachment A. Subscribers obtain an account by registering with Google, Inc. During the registration process, Google, Inc. asks subscribers to provide basic personal information. Therefore, the computers of Google, Inc. are likely to contain stored electronic communications (including retrieved and unretrieved email for Google, Inc. subscribers) and information concerning subscribers and their use of Google, Inc. services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

28. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

29. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

30. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

8

31. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement). Further, email addresses are frequently used in web commerce. Persons placing orders frequently must provide an email address to process an online order and confirmation of orders are frequently sent to customers' email addresses. Hence, a record of online purchases may be found in an email account.

## Conclusion

32. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google, Inc. who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## Authorization Request

33. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. *See* 18 U.S.C. §§2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

Dated at Burlington, in the District of Vermont, this 31 day of January 2019.

Jennie Emmons
Special Agent, FBI

Sworn to and subscribed before me this 31st day of January 2019.

Honorable John M. Conroy
United States Magistrate Judge